# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| FREDERICK DREW, | ) | CASE NO. 1:20cv01397 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Frederick Drew (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 9). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

I.      **Procedural History**

On October 23, 2017, Plaintiff filed his application for SSI, alleging a disability onset date of October 23, 2017. (R. 8, Transcript (Tr.) 93). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 134). Plaintiff participated in the hearing on August 14, 2019, was represented by counsel, and testified. (Tr. 66). A vocational expert (VE) also participated and testified. *Id*. On September 12, 2019, the ALJ found Plaintiff not disabled. (Tr. 25-37). On June 10, 2020, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 10, 11).

Plaintiff asserts that the ALJ erred when he determined that Plaintiff did not meet SSA Listing 1.03 and when he reviewed the medical opinions of record. (R. 10, PageID# 534).

II.     **Evidence**
        A.      **Relevant Medical Evidence[2]**

                1.      **Treatment Records**

The ALJ summed up Plaintiff's medical information regarding treatments prior to the date of his disability application as follows: "In May of 2017, the claimant had no arthralgias, no myalgias, no back pain, no joint swelling, and no limb swelling. His gait was normal, and there was no joint swelling seen. In September of 2017, the claimant had views of his right hip taken. They showed severe osteoarthritis of the right hip, as well as moderate osteoarthritis of the left hip.

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

(3F:6)." (Tr. 32). Medical treatment after his application for disability benefits are summarized as

follows:

| Date | Physician | Summary | Tr. |
|---|---|---|---|
| 10/13/17 | Praveer Kumar, M.D. Primary Care Physician | **Report:** Hip pain. **Examination:** normal findings, no joint swelling, normal gait, no focal neurological deficits. Noted to have degenerative joint disease as well as osteoarthritis. **Treatment:** Hip injection, anti-inflammatory medication. | 231-34 |
| 11/13/17 | Timothy Moore, M.D. | Steroid Injection for right hip pain. | 267 |
| 1/16/18 | Dr. Kumar | **Report:** Hip pain, injections did not help. **Examination:** joint swelling, joint stiffness, limited range of motion, limb pain, normal gait, no neurological deficits, no arthralgias, no myalgias, no back pain, no limb swelling, no numbness, no dizziness, no tingling and no fainting. | 271-74 |
| 1/22/18 | ER | **Report:** Left leg pain radiating to chest and left arm. **Examination:** normal, 5/5 strength throughout. | 328-29 |
| 2/13/18 | Hip Injection (by Ankit Maheshwari, M.D.), EMG Exam of the upper left extremity (by Barbara Shapiro, M.D., Ph.D.) | **Report:** intermittent pain and locking of left-hand fingers, shoulder pain. **EMG results:** normal, no evidence of radiculopathy or neuropathy. | 308-10, 318-19 |
| 4/19/18 | X-Ray of Lumbar Spine | **X-Ray Result:** slight L5-S1 disk space narrowing. No fracture, no subluxation, or radiopaque foreign body. Osteophyte formation. Facet sclerosis. The pedicles and sacroiliac joints were unremarkable. Nonspecific pelvic calcifications were noted. | 320 |
| 8/29/18 | ER | **Report:** recurrent episodes of chest pain. **Examination:** "normal vital signs. CBC BMP EKG chest x-ray and troponin were all negative." Discharged home in stable condition. | 395-99 |
| 9/11/18 | Dr. Kumar | **Comprehensive physical examination Examination:** normal gait and no | 380-83 |

| | | | |
|---|---|---|---|
| | | neurological deficits. **Treatment:** advised to lose weight and follow up with orthopedist regarding degenerative joint disease. | |
| 10/29/18 | ER | **Report:** lightheaded, headache, dizziness with associated blurred vision. **Examination:** steady gait, full strength, intact sensation. Normal EKG | 392 |
| 12/4/18 | Hip X-Ray | No significant abnormalities, degeneration had progressed, "significantly so on the left." **Conclusion:** severe joint space narrowing causing bone on bone contact. | 388-90 |
| 12/13/18 | Steven Fitzgerald, M.D. — Orthopedic surgeon | **Report:** hip pain (right greater than left), injections did not help. Groin pain. Pain rate 9 out of 10. Anti-inflammatories and intra-articular injections give limited relief. **Examination:** used cane, "obvious antalgic gait" and "extremely painful internal rotation". **Treatment:** failed a 3-month trial reasonable conservative treatment and likely to proceed with total hip arthroplasty. Right hip replacement surgery suggested. | 385-87 |
| 3/26/19 | Dr. Fitzgerald | Right hip replacement without complications. | 416-420 |
| 6/21/19 | ER | **Report:** right back and shoulder pain. **Examination:** normal strength and sensation, normal range of motion. **Treatment:** medications for pain | 451 |
| 7/8/19 | Dr. Kumar | **Report:** Follow up for hip surgery, "doing well after [the] surgery." Improvements in pain in his right hip, worsening of the pain in his left hip. **Examination:** arthralgias, joint swelling and limb pain, but no myalgias, no back pain, no joint stiffness and no limb swelling. Normal gait, but tender right and left hip, no neurological deficits. | 485-87 |

## 2.    Medical Opinions Concerning Plaintiff's Functional Limitations

On April 19, 2018, Eulogio Sioson, M.D., conducted an internal medicine consultative examination. (Tr. 322-26). Dr. Sioson noted that Plaintiff's medical problems included

4

hypertension and back/joint pains. On examination, Dr. Sioson found that Plaintiff walked normally without an assistive device and could get on and off the examination table. (Tr. 322). Plaintiff declined to do heel/toe walking and to squat due to back pain. (*Id*). Plaintiff's left knee was tender; his right knee was not tender but had pain on range of motion. (Tr. 323). Plaintiff's knees had no apparent effusion or gross instability. (*Id*). Plaintiff had marked lower back tenderness, and pain in his back and his hips when doing straight leg raises while seated and at 20 degrees while lying down. (Tr .323). Dr. Sioson opined that "if one considers [plaintiff's] pain and above findings, he would be sitting most of the time, he could walk and stand but not continuously, [and] occasionally lift and carry from 0-10 lbs. He could do handling and manipulation. Hearing and speaking appeared unaffected." (Tr. 323).

On April 24, 2018, state agency physician Elizabeth Das, M.D., reviewed the medical file, including Dr. Sioson's consultative exam findings. (Tr. 101-06). Dr. Das noted that Dr. Sioson's "opinion is partially consistent. Examiner opines a sedentary position but his exam shows a normal gait and no significant deficits that would require that extreme of a limitation." (Tr. 102). Dr. Das opined that Plaintiff could lift/carry twenty pounds occasionally and ten pounds frequently; sit and stand/walk six hours in an eight-hour workday; unlimited push/pull; frequently balance and kneel; and occasionally stoop, crouch, crawl, and climb ramps and stairs (but never ladders, ropes or scaffolds) (Tr. 103). On August 10, 2018, state agency physician Linda Hall, M.D., reviewed Plaintiff's medical file and concurred with Dr. Das's opinion. (Tr. 115-16).

On July 10, 2019, Dr. Fitzgerald completed a medical source statement. (Tr. 427-28). Dr. Fitzgerald opined that Plaintiff was limited to occasionally lifting 20 pounds; limited to standing and/or walking for two hours in an eight-hour work day; he could rarely climb, balance, stoop, crouch, kneel, crawl; occasionally reach and push/pull; could not use moving machinery. (Tr. 427-

28). Dr. Fitzgerald noted that Plaintiff was prescribed a cane and a walker and needed to alternate positions between sitting, standing and walking, at will. (Tr. 428). Dr. Fitzgerald opined that Plaintiff experienced severe pain which interfered with his concentration, takes him off task, and would cause absenteeism; he would need to elevate his legs at a 45-degree angle at will and would require additional unscheduled rest periods during an eight-hour workday, amounting to two hours. (Tr. 428).

**B.      Relevant Hearing Testimony**

During the August 14, 2019 hearing, Plaintiff testified as follows:

- He started using a walker at the end of March 2019, after his right hip surgery. (Tr. 70). He could stand without the walker, but it had to be from a chair with arms. (Tr. 72). He had pain in his left knee, which he rated at seven out of ten, and in his right hip rated at about eight. He was doing physical therapy at home but needed insurance verification to continue, and was also performing an at-home exercise program. (*Id.*).

- His doctors wanted to perform left hip replacement surgery. (Tr. 73). He lived with his mother, and they had a ramp to get into the house. He drives to the grocery store occasionally but uses the electric scooter at the store. (Tr. 74-75). He does not do any household chores. The bathroom has a toilet lift, a grab bar, and a shower chair. (Tr. 75).

- He described his day as follows: he wakes up and does some therapy exercises in bed, washes up and then sits in a reclining chair for the rest of the day. (Tr. 76-77). He spends the day watching TV and listening to music. He can sit for about an hour before he must change positions due to pain. He lays down for about 15 to 30 minutes before he can sit down again. (Tr. 77). He uses a walker to walk around the house, and could walk for about a block but would be in pain and need to rest. (Tr. 78). His left hip hurts worse than his right. (Tr. 78). His right hip swells and he applies ice to it after he walks. (Tr. 82). He ices his hip four to six times a day. (Tr. 82).

- He takes Ibuprofen for the pain and naps throughout the day. (Tr. 79). The pain is constant and affects his ability to concentrate. (Tr. 80).

- Regarding his medical care, Plaintiff testified that he saw his primary care physician, Dr. Kumar, and his orthopedist, Dr. Fitzgerald. (Tr. 80). He was scheduled to see Dr. Kumar a month after the hearing for a physical. (Tr. 81).

- He had difficulty using his hands because they cramp, and had issues with his lower back,

both hips, his knee, hands and had chest pains. (Tr. 81).

The ALJ posed the following hypothetical question to the VE:

> First person is male, 47 years of age, same education as Mr. Drew, no past work.
> First person can lift, carry 20 pounds occasionally, 10 pounds frequently. Can walk
> six out of eight, can stand six out of eight, can sit six out of eight. No limit on push,
> pull or foot pedal. This person can occasionally use a ramp or stairs. Never a ladder,
> rope or a scaffold. Can frequently balance. Occasionally stoop, frequently kneel,
> occasionally crouch and occasionally crawl. There are no manipulative, visual or
> communications limits. This person must avoid dangerous machinery and
> unprotected heights.

(Tr. 83). The VE testified that the individual could work as a storage facility rental clerk,

(unskilled, light) with 75,910 jobs in the national economy, parking lot attendant (unskilled, light)

with 44,870 jobs in the national economy, order caller (unskilled, light) with 52,560 jobs in the

national economy. (Tr. 84).

The ALJ posed the following second hypothetical question to the VE:

> The second person can lift, carry 20 pounds occasionally, 10 pounds frequently.
> Can walk four out of eight, can stand four out of eight, can sit six out of eight. No
> push, pull or foot pedal. This person can occasionally use a ramp or stairs, never a
> ladder, rope or a scaffold. Balancing, stooping, kneeling, crouching and crawling
> are all occasional. All the rest are the same as the previous hypothetical.

(*Id.*). The VE testified that the individual could still work as a storage facility rental clerk and as

a parking lot attendant. The individual could work as a mailroom clerk (unskilled, light) with

24,770 jobs in the national economy. (Tr. 85).

Plaintiff's counsel posed the following hypothetical to the VE:

> [I]f we assume an individual who could lift 20 pounds occasionally, 10 pounds
> frequently, could stand and walk two hours out of an eight hour day…Should never
> climb, rarely balance, stoop, crouch, kneel, crawl. Occasionally reach all directions.
> Occasionally push and pull.

(Tr. 85-86). The VE testified that there would be no jobs available for that individual. (Tr. 86).

The VE further testified that an individual who could reach frequently but would require a walker for all of the standing and walking portions of the job was not consistent with competitive work. (Tr. 86). Finally, the VE testified that if either of the hypothetical individuals posed by the ALJ would be off task 15 percent of a typical work day as a result of pain, that person is not consistent with competitive work. (Tr. 87).

### III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the

claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

1. The claimant has not engaged in substantial gainful activity since October 23, 2017, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following severe impairments: dysfunction of the major joints, disorders of the back, osteoarthritis, right total hip replacement, and obesity (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except can lift 20 pounds occasionally, 10 pounds frequently. Can walk, sit, and stand 6 out of 8 hours. Can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. Can occasionally crouch and crawl. Can frequently balance and kneel. Must avoid dangerous machinery and unprotected heights.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on *** 1971 and was 46 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional

capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 23, 2017, the date the application was filed (20 CFR 416.920(g)).

(Tr. 30-36).

## V.      Law and Analysis

### A.      Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.     Plaintiff's Assignments of Error

### 1.     The ALJ's Review of Plaintiff's Medical Opinions

In the first assignment of error, Plaintiff contends that the ALJ erroneously discounted the medical opinions of his orthopedic surgeon, Dr. Fitzgerald, and the consultive examiner, Dr. Sioson. (R. 10, Page ID# 544). Specifically, Plaintiff states that these physicians opined that his physical impairments caused him significant pain and precluded him from prolonged standing or walking. *Id.* The ALJ did not adopt these findings, but Plaintiff contends they are consistent with and supported by the record. *Id.*

For claims filed before March 27, 2017, the "treating source rule" applied, which generally required the ALJ to provide controlling weight to the well-supported opinions from treating physicians. However, the Social Security Administration (SSA) has amended the regulations for evaluating medical opinions in connection with claims filed after March 27, 2017, as in the instant case. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Notably, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). An ALJ's decision, however, must "articulate how he considered the medical opinions and prior administrative medical findings" in adjudicating the claim. 20 C.F.R. § 404.1520c(a).

Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c). The ALJ is required to explain how the decision considered the supportability and consistency of a source's medical opinion(s), but generally is

not required to discuss the other factors. 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

When considering an opinion's supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, the regulations state "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ addressed Dr. Fitzgerald's medical source statement as follows:

> The medical opinion of Dr. Steven Fitzgerald is found unpersuasive, as it is inconsistent. His report notes the claimant can occasionally lift 20 pounds, but rarely perform posturals. He also noted that the claimant would need an additional 2 hours of rest time a day. (See 19F). This report was completed on July 10, 2019, three months after his hip surgery. It is not clear whether this is a temporary restriction, or permanent. Additionally, although Dr. Fitzgerald has a treating relationship with the claimant, he does not have program knowledge, and his opinion is self- contradictory. For these reasons, his report is unpersuasive.

(Tr. 35).

The ALJ further noted that "[w]hile the claimant had complaints of hip pain, and eventually underwent a right hip replacement, the claimant continued to have a normal gait and normal muscular strength." (Tr. 35). Thus, the ALJ concluded that the severe restrictions set forth in Dr. Fitzgerald's opinion were not consistent with the record. The record does not indicate, nor does Plaintiff argue, that Dr. Fitzgerald met with Plaintiff any time after his surgery to form his opinion.

Rather, on July 8, 2019, two days prior to Dr. Fitzgerald's medical opinion, Plaintiff followed up with his primary care physician, Dr. Kumar, regarding his hip replacement surgery. (Tr. 485-87). Dr. Kumar found that Plaintiff was doing well post-surgery and he had a normal gait. (*Id.*).

Further, the ALJ noted that Dr. Fitzgerald's opinion does not indicate the duration of the listed restrictions. (Tr. 35). When listing the medical findings that support each limitation, the doctor indicated only that it was: status post right total-hip replacement. (Tr. 427-28). Thus, as the ALJ noted, it is not clear whether these extreme restrictions were temporary as Plaintiff recovered from surgery, or permanent. (Tr. 35). To qualify as disabled under the Act, Plaintiff must establish that he is unable to work for twelve continuous months. *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002). There is no indication that Dr. Fitzgerald's limitations, which were not consistent with the record, were meant to be anything more than temporary.

The court finds that the ALJ's decision provided a sufficient discussion of Plaintiff's medical evidence and analyzed Dr. Fitzgerald's opinions under the pertinent regulatory factors of supportability and consistency. Having considered the parties' arguments and governing law, the court finds no error in the ALJ's consideration of the doctor's opinions and the stated reasons for discounting them. 20 C.F.R. § 404.1520c(a), (b), (c).

Plaintiff further asserts that the ALJ erred in discounting the SSA's consultative examiner, Dr. Sioson. The ALJ addressed Dr. Sioson's opinion as follows:

> Consultative examiner Dr. Eulogio Sioson is found to be unpersuasive. He opined that if one considers his pain and above findings, he would be sitting most of the time, he could walk and stand but not continuously, occasionally lift and carry from 0-10 lbs. He could do handling and manipulation. Hearing and speaking appeared unaffected. (See 7F). This is inconsistent with the record, which supports a less than light exertional level. Throughout the record, the claimant had a normal gait, even after his hip surgery. While pain in the joints was noted, he had normal strength, despite his obesity. While Dr. Sioson has program knowledge, he does not have a treating relationship with the claimant. For these reasons, his report is unpersuasive.

(Tr. 35).

Plaintiff's argument regarding the ALJ's analysis of Dr. Sioson's is based primarily on the prior regulations regarding treating physicians. (R. 10, PageID# 547). However, as noted above, under the current regulations, the ALJ must explain how he considered the supportability and consistency of a Dr. Sioson's medical opinion. 20 C.F.R. § 404.1520c(b)(2). Regarding consistency and supportability, the ALJ again noted that the bulk of Plaintiff's medical records indicated that he walked with a normal gait, even after his right hip replacement surgery. (Tr. 35). The ALJ found that Dr. Sioson's conclusions were inconsistent with those findings. (Tr. 35). Plaintiff does not challenge this conclusion. Instead, Plaintiff points to other evidence to support his assertion that Dr. Sioson's opinion is consistent with the record. For example, he notes that after his right hip replacement he relied on a wheeled walker for ambulation, which he asserts supports Dr. Sioson's medical opinions regarding his restricted capacity for walking and standing. (R. 10, PageID# 548). Such an argument, however, would require this court to improperly reweigh the evidence and, therefore, the court declines to do so. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Similarly, Plaintiff's contentions that Dr. Sioson and Dr. Fitzgerald's opinions are more persuasive than the State Agency consultants would also require this court to impermissibly reweigh the evidence. *Id.* Accordingly, Plaintiff's first assignment of error is overruled.

## 2.     Listing 1.03

In the second assignment of error, Plaintiff contends that the ALJ erred at Step Three when he concluded that Plaintiff did not meet Listing 1.03 regarding reconstructive surgery of a major weight bearing joint. (R. 10, PageID# 548). Plaintiff bears the burden at Step Three to establish

that his impairments meet a listed impairment. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). The criteria must all be met for a period of twelve consecutive months. 20 C.F.R. §404.1509

To meet Listing 1.03, Plaintiff must establish that he has had "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.03. Plaintiff's argument centers upon whether he satisfied the portion of the listing dealing with "ineffective ambulation." (R. 10, PageID# 549). The court agrees with the ALJ's determination that Plaintiff failed to demonstrate an inability to ambulate effectively. (Tr. 31).

Ineffective ambulation is defined as "an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities" and "having insufficient lower extremity functioning… to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.00B2b. Moreover, to ambulate effectively, an individual must be able to sustain "a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and must be able "to travel without companion assistance to and from a place of employment or school." *Id*. The regulations provide the following examples of ineffective ambulation:

[T]he inability to walk without the use of a walker, two crutches or two canes, the

15

inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Id.*

Here, the ALJ determined that Plaintiff's impairments did not meet Listing 1.03 "because the record, consistent with the findings below, failed to demonstrate an inability to ambulate effectively, as defined in 1.00B2b, which occurred, or is expected to occur within 12 months of onset." (Tr. 31). The ALJ noted that Plaintiff's right total hip replacement occurred on March 26, 2019. At a follow upon appointment on July 8, 2019, Plaintiff was "doing well after his hip surgery. He had joint swelling, joint stiffness, limb pain, but no arthralgias, no myalgias, no back pain, and no limb swelling. (21F:6). He had a normal gait, but a tender right and left hip. His nerves were intact with no focal neuro deficits. (21F:8)."[3] (Tr. 34, citing Tr 485, 487). This appointment is the only post-surgical medical record in evidence.

In addition, the ALJ heard testimony from Plaintiff at the August 14, 2019 hearing (Tr. 68-82), and summarized it as follows:

> The claimant testified at the hearing that he is unable to work due to issues with his hip. He stated that he started using a rolling walker right after his surgery. He noted that he is able to stand up without the walker, but that he has to be sitting in a chair with arms on it. He completes physical therapy at his home. He stated that he lives with his mother and he drives occasionally. He goes grocery shopping, but uses the electric scooter. He noted that he has grab bars in his shower, and has a walker and a cane. He does not require assistance to bathe, but sometimes needs help putting his shoes on. He wears shoes that do not need to be tied. He washes the dishes, but does not do lawn maintenance. He stated that he has difficulty using his hands because they cramp up.

---

[3] Plaintiff contends the ALJ misstated the record that Plaintiff had "no arthralgias" when the record actually indicates the presence of arthralgias (joint pain). (R. 10, PageID# 550). Although it appears to be a scrivener's error in noting "no arthralgias", it appears harmless as the ALJ also noted Plaintiff had "joint sweeping, joint stiffness" and "tenderness right and left hip." (Tr. 34, 485).

(Tr. 32). Notably, the administrative hearing and Plaintiff's testimony occurred less than five months after his hip replacement surgery. The ALJ issued the underlying decision on September 17, 2019, less than six months after Plaintiff's surgery.

Plaintiff does not contest that the July 8, 2019 treatment note stated that he was "doing well" and that his gait was normal. Instead, Plaintiff contends that this evidence was "undercut" by other notations that he exhibited "joint swelling, joint stiffness, limb pain," "tender hips" and worsening pain in his left hip. (R. 10, PageID# 549, quoting Tr. 34, 485). However, Listing 1.03 required Plaintiff to establish that he could not ambulate effectively and the return to effective ambulation was not expected to occur within 12 months of his surgery. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.03. Specifically, Plaintiff was required to establish that he had an extreme limitation of his ability to walk. *Id.* § 1.00(B)(2)(b)(1). Although Plaintiff contends that he was unable to walk effectively without his walker (R. 10, PageID# 550), he points to no medical evidence to establish that he was expected to require the walker for twelve months post-surgery or that it otherwise remained medically necessary for such a period.

When considering Plaintiff's argument pertaining to the use of a walker, the analysis is guided by Social Security Ruling (SSR) 96-9p, which provides:

> **Medically required hand-held assistive device**: *To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, **and** describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).* The adjudicator must always consider the particular facts of a case. For example, if a medically required hand-held assistive device is needed only for prolonged ambulation, walking on uneven terrain, or ascending or descending slopes, the unskilled sedentary occupational base will not ordinarily be significantly eroded.

SSR 96-9, 1996 WL 374185 (Jul. 2, 1996) (emphasis added).

Plaintiff relies upon his own testimony to support his argument that he needs a walker to ambulate. (R. 10, PageID# 550). He further points to Dr. Fitzgerald's medical opinion wherein he checked a box on the opinion form that Plaintiff had been prescribed a walker. (R. 10, PageID# 542). Indeed, the ALJ recognized that Plaintiff testified that he started using a walker after his right-hip replacement surgery. (Tr. 71, 72). Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, finding it unavailing when the record lacked supporting medical documentation demonstrating the requirement for such a device. *See, e.g., Blackburn v. Colvin, No.* 1:15cv1398, 2016 WL 4821766 at *5 (N.D. Ohio Sept. 15, 2016) (noting that Plaintiff's use of crutches and a wheelchair to ambulate were not supported by medical documentation, as required by Social Security Ruling 96-9p) (Pearson, J.); *Mitchell v. Comm'r of Soc. Sec.*, No. 4:13cv1969, 2014 WL 3738270 (N.D. Ohio Jul. 29, 2014) (finding that Plaintiff's testimony did not qualify as "medical documentation establishing the need" for the cane under SSR 96-9p) (Pearson, J.); *Smith v. Astrue*, No. 2:11-0065, 2012 WL 4329007 at *8 (M.D. Tenn. July 16, 2012), *report and recommendation adopted*, 2012 WL 4328993 (M.D. Tenn. Sept. 20, 2012) ("Even if the ALJ had not discussed the use of the cane, Plaintiff failed to provide medical documentation of its requirement. The only evidence supporting a cane requirement comes from Plaintiff's testimony.").

Plaintiff fails to draw the court's attention to any medical documentation indicating the circumstances in which he was prescribed a walker. Plaintiff's hearing testimony does not qualify as medical documentation. While there is some indication in the medical records that Plaintiff was using a walker, this alone is insufficient to establish that the cane was medically required and the expected duration of its medical necessity. Moreover, Plaintiff does not cite to any medical records describing the circumstances for which a walker is needed, as required by SSR 96-9p. Finally,

Plaintiff fails to point to any evidence to establish that his use of a walker is necessary for twelve months.

Plaintiff's argument that he requires a walker to ambulate and therefore does not ambulate effectively, requires the court to re-weigh the evidence. The court declines to do so. *Brainard*, 889 F.2d at 681. Accordingly, Plaintiff's second assignment of error is overruled.

**VI.      Conclusion**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: September 27, 2021